1
2
3
4
5

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

6
7
8
9

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

10

*Attorneys for Plaintiff*

11

12

13

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| GARY GIBSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, and DOES JLRNA 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-00769-CJC-GJS<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gary Gibson ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Jaguar Land Rover North America, LLC ("Defendant" or "JLRNA"), upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.      This class action arises out of JLRNA's failure to accurately and comprehensively identify the vehicle parts that should properly be classified as "high-cost emissions warranty parts" under California's emission control system warranty requirements and covered under the emissions warranty for 7-years and 70,000 miles.

2.      Instead, in order to minimize JLRNA's warranty exposure, JLRNA has unilaterally limited the parts that should be covered under the emissions warranty for 7-years and 70,000 miles, including the parts specifically identified by Plaintiff.

3.      By not comprehensively identifying the parts that should be included as "high-cost" warranty parts, Jaguar is able to limit the warranty coverage for those parts to only 3-years and 50,000 miles.

4.      By this action, Plaintiff seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the 7-years and 70,000-mile emissions warranty for the in tank fuel pump and an injunction to compel JLRNA to properly identify the in tank fuel pump as a high-priced warranty part.

5.      The in tank fuel pump in the Class Vehicles is a high-cost warranty part, as demonstrated below.

## BACKGROUND

6.      For decades, JLRNA has been in the business of importing and distributing JLRNA vehicles in the State of California, with the intent to sell JLRNA vehicles to consumers in California. As such, the JLRNA vehicles have been subject to state and federal regulations regarding both emissions standards and regarding JLRNA's obligations to provide consumers with warranties relating to emissions parts.

7.      Specifically, dating back over 20 years, California Code of Regulations, Title 13, Section 2035, *et seq.*, entitled "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required JLRNA to identify to the California Air Resources Board ("CARB") all vehicle parts that are "high-priced" "warranted parts," and has required JLRNA to provide a 7-year 70,000-mile warranty to California consumers relating to all "high-priced" "warranted parts."   This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty."

8.      The CCR very clearly defines the methodology that JLRNA is required to use in order to identify which parts should be covered by the 7-year 70,000-mile warranty.

9.      Pursuant CCR Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as, "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

10.      Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)      Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)      Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

1     (3)    Free from defects in materials and workmanship which cause the failure of a

2         warranted part described in section (c) below for seven years or 70,000 miles,

3         whichever first occurs."

4     11.    California Code of Regulations Section 2037(c) deals with "high-priced

5 warranted parts" under the California Emission Control System Warranty and states:

6     (1)    Each manufacturer shall identify in its application for certification the "high-

7         priced" warranted parts which are:

8         (a)    For 1990 through 2007 model year vehicles: [i] included on the Board's

9              "Emissions Warranty Parts List" as last amended February 22, 1985,

10            incorporated herein by reference, and; [ii] have an individual replacement

11            cost at the time of certification exceeding the cost limit defined in section

12            (c)(3);

13         (b)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a

14              warranted part in section (b)(2) above, and; [ii] have an individual

15            replacement cost at the time of certification exceeding the cost limit

16            defined in section (c)(3).

17     (2)    The replacement cost shall be the retail cost to a vehicle owner and include the

18         cost of the part, labor, and standard diagnosis. The costs shall be those of the

19         highest-cost metropolitan area of California.

20     (3)    The cost limit shall be calculated using the following equation:

21         Cost limit $\{n\}$ = \$300 x (CPI$\{n-2\}$)/ 118.3

22         Cost limit $\{n\}$ is the cost limit for the applicable model year of the vehicle

23         rounded to the nearest ten dollars.

24     12.    In summary, any part that either effects a vehicle's emissions, or causes a

25 vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

26 determining coverage under CCR, considered a "warranted part." If a part is a "warranted part,"

27 the part shall have a 3-year 50,000-mile warranty.

28

13.     However,  if the part is a "high-priced" warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year 70,000-mile emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

**JLRNA'S CONDUCT**

14.     At all times herein relevant, for each new motor vehicle intended to be distributed by JLRNA in the State of California, at the time of distribution, JLRNA has purported to accurately notify CARB of the parts which should be covered under the 7-year 70,000-mile California emissions warranty.

15.     Furthermore, at all times herein relevant, for each new vehicle intended to be distributed by JLRNA in the State of California, at the time of distribution, JLRNA has purported to provide accurate written warranty documents with the vehicle, including a document entitled "Passport to Service," which purports to accurately identify all of the vehicle parts that are covered under the 7-year 70,000-mile California emissions warranty.

16.     JLRNA has engaged in a systematic business practice of omitting from the JLRNA Passport to Service warranty booklet provided to owners and lessees at the time of sale or lease, and in resources provided by JLRNA to its dealerships both at the time of sale or lease and afterwards, all of the parts that should be identified as "high-priced" warranted parts and that should be covered under the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  JLRNA classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year 70,000-mile California emissions warranty, but not all of the high-priced warranted parts that should be covered under the 7-year 70,000-mile California emissions warranty.

17.     Thereafter, when JLRNA vehicles are presented by consumers to JLRNA authorized repair facilities for repair, JLRNA fails to provide coverage under the 7-year 70,000-mile California emissions warranty for all of the repairs that should be covered under the 7-year 70,000-mile California emissions warranty.

18.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by JLRNA.

19.     JLRNA engages in the alleged misconduct in order to reduce the amount of money that JLRNA has to pay out on warranty-related repairs and warranty claims.

20.     If JLRNA properly identified all of the high-priced warranted parts that should be correctly identified as such, then JLRNA dealerships would properly provide coverage for said high-priced parts under warranty.

21.     The failure by JLRNA to properly identify parts as "high-priced" warranted parts under the CCR violates California Business and Professions Code section 17200, *et seq*. (the "UCL") and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"), and is intended to minimize the amount of money that JLRNA has to pay out in warranty claims.

22.     Plaintiff and other consumers have suffered damage and lost money or property as a result of JLRNA's wrongful conduct.

23.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that JLRNA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for JLRNA's inaccuracy.  JLRNA alone is responsible for selecting and identifying to CARB the parts that JLRNA has unilaterally identified as "high-cost emissions warranty parts" as part of its application for vehicle certification.  That list may be correct as far as it goes or as far as CARB may know.  But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

**JURISDICTION AND VENUE**

24.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Defendant JLRNA; and (ii) aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) JLRNA is not a state, state official, or other governmental entity against whom the Court may be foreclosed

from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

25.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the United States District Court for the Northern district of California transferred the case to this District on January 24, 2020, having found that a substantial part of the events giving rise to the claims alleged herein occurred in this District (ECF No. 40).

## PARTIES

27.     Plaintiff Gary Gibson is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of San Luis Obispo.

28.     JLRNA was and is, upon information and belief, a New Jersey limited liability company doing business in California.

29.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

30.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of JLRNA at all relevant times.

31.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary.  Each reference in this Complaint to "JLRNA" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

32.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## PLAINTIFF'S FACTS

33.     On May 28, 2013, Plaintiff purchased a new 2013 Land Rover LR4, VIN SALAK2D42DA673906 ("Gibson Vehicle") from Jaguar Land Rover Ventura (the "Ventura Dealership") located in Ventura County, California.  The Ventura Dealership is a JLRNA franchise dealership, authorized by JLRNA to sell and repair JLRNA vehicles. Furthermore, the Ventura Dealership is a designated JLRNA repair facility, where consumers can present their vehicles for repair pursuant to the JLRNA warranty

34.     At the time that Plaintiff purchased the Gibson Vehicle, Plaintiff was advised that the Gibson Vehicle came with a warranty. The warranty booklet provided to Plaintiff indicated that the Gibson Vehicle's warranty included coverage pursuant to the California emissions warranty.

35.     On September 12, 2017, at 60,320 miles, the Gibson Vehicle underwent repairs at the Ventura Dealership because Plaintiff was reporting that the Gibson Vehicle was stalling. The Ventura Dealership generated Invoice 45956 relating to this repair visit.

36.     Although the Ventura Dealership was unable to duplicate the stalling complaint during the test drive, the Ventura Dealership determined that the Gibson Vehicle had fault codes stored in the system for low fuel pressure. The Ventura Dealership installed a new fuel pump driver module and new low-pressure sensor.

37.     The cost for the labor associated with the repairs was $834.00, and the total cost of repairs was $1,236.78. Plaintiff paid for these repairs out of pocket.

38.     On October 4, 2017, at 60,650 miles, the Gibson Vehicle again underwent repairs at the Ventura Dealership because the Gibson Vehicle continued to stall. The Ventura Dealership generated Invoice 46192 relating to this repair visit.  The Ventura Dealership found that the low-pressure fuel pump, also known as the in tank fuel pump, was intermittently failing

on the secondary circuit side, causing the pump to cease working while driving.  A new low-pressure fuel pump, gasket, and relay were installed.

39.     The cost of the labor associated with the repairs was $695.00, and the total cost of the repairs was $1,249.20. Plaintiff again paid for these repairs out of pocket.

40.     The cost associated with the diagnosis and repairs relating to Invoice 46192 should have been covered and paid for by JLRNA under the 7-year 70,000-mile California emissions warranty. This is because, pursuant to California Code of Regulations section 2037(c), the in tank fuel pump should have been identified as a high-priced emissions part, and the parts relating to that repair should have been covered under section 2037(c).

41.     Furthermore, the Passport to Service relating to the Model Year ("MY") 2013 Land Rover LR4 should have identified said parts as being high-priced emissions parts. This is because, at the time of initial distribution, the costs associated with diagnosing the parts as being defective, purchasing the parts, and installing the parts qualified the parts as high-priced emissions parts, as described in the statute and detailed below.

42.     Plaintiff's claim is substantiated by the fact that the in tank fuel pump was identified in the MY 2012 and MY 2016 Land Rover LR4 Passport to Service warranty booklets as a high-priced emissions part.  But, the same exact part (which has the same exact part number, the same exact price for labor, and the same exact replacement procedure) was *not* identified in the MY 2013 Land Rover LR4 Passport to Service as being a high-priced emissions part.

43.     Specifically, the repair procedure documents published by JLRNA and available to repair facilities indicate that the MY 2012 through MY 2016 Land Rover LR4 is equipped with the same in tank fuel pump, currently identified as part number LR043385. The allowable labor time that JLRNA will pay authorized repair facilities, as indicated in the repair procedure documents published by JLRNA, to replace the in tank fuel pump for the MY 2012 through MY2016 Land Rover LR4 is exactly the same, 1.8 hours, plus the time and cost of draining the fuel tank.  As stated below, consumers are charged five (5) hours of labor for the repair, when the repair is paid for by the consumer rather than under warranty. On information and belief,

there is no legitimate explanation for why, based on these facts, the in tank fuel pump was not

identified by JLRNA as a high-cost emission part and, to date, JLRNA has not explained the

basis for JLRNA's determination, despite Plaintiff's request.

44.     Moreover, the MY 2012 Land Rover LR4 Passport to Service booklet provided

to California consumers at the time they purchased or leased MY 2012 Land Rover LR4

vehicles *did* identify the in tank fuel pump as a high-priced emissions part covered under the 7-

year 70,000-mile California emissions warranty.  The identification in the MY 2012 Land Rover

LR4 Passport to Service of this part as being a high-priced emissions part was the result of

JLRNA analyzing the cost of the actual part, the labor cost of diagnosing the part as being

defective, and the labor cost of replacing the part, which led JLRNA to conclude that the part

was a high-priced emissions part.

45.     The MY 2015 and 2016 Land Rover LR4 Passport to Service booklet given to

California consumers again *did* identify the in tank fuel pump as a high-priced part covered

under the 7-year 70,000-mile California emissions warranty.  For MY 2015 and 2016 Land

Rover LR4 vehicles, JLRNA chose to correctly identify the in tank fuel pump as being a high-

priced emissions part covered under the 7-year 70,000-mile California emissions warranty.

46.     However, the MY 2013 through MY 2014 Land Rover LR4 Passport to Service

booklet provided to California consumers at the time that they purchased or leased MY 2013

through MY 2014 Land Rover LR4 vehicles *does not* identify the in tank fuel pump as being

covered under the 7-year 70,000-mile California emissions warranty, notwithstanding that it is

the same part, with the same repair procedure, as the Model Year 2012 part.

47.     On information and belief, JLRNA's failure to include the in tank fuel pump as a

high-priced part for MY 2013 and MY 2014 was an intentional omission by JLRNA designed to

limit JLRNA's warranty exposure and is just one example of JLRNA's scheme to fail to

properly and comprehensively identify all of the parts that should be identified as high-priced

warranted parts and covered for 7-years or 70,000 miles under the California emissions

warranty.

48.     While Plaintiff has provided an analysis below of why the in tank fuel pump should have been designated as a high-priced part based on available information, the details of how JLRNA actually applied the CCR formula with respect to the in tank fuel pump are exclusively within JLRNA's possession.  Similarly, the information regarding what other parts satisfied the CCR requirements but were not identified by JLRNA as high-priced emissions warranty parts also are in the exclusive possession of JLRNA. Further, as alleged below, Plaintiff specifically asked JLRNA to explain how JLRNA determined that the in tank fuel pump was not a high-priced part, and JLRNA refused to provide the requested information.

49.     When JLRNA vehicles are presented to JLRNA dealerships for repairs of defects which should be covered under the 7-year 70,000-mile California emissions warranty, but are not identified by JLRNA's Passport to Service booklets as being covered, JLRNA refuses to provide 7-year 70,000-mile California emissions warranty coverage.  As explained herein, Plaintiff presented his 2013 Land Rover LR4 vehicle to a JLRNA authorized repair facility for repairs prior to the end of the 7-year 70,000-mile California emissions warranty period for high-priced emissions parts. Plaintiff was wrongfully denied warranty coverage for the in tank fuel pump, which should have been covered under the 7-year 70,000-mile California emissions warranty.

50.     The reason that Plaintiff was charged for said repairs was not the result of an individual issue relating to the Ventura Dealership, or an oversight by the Ventura Dealership in failing to identify the repairs as repairs that should have been covered under the 7-year 70,000-mile California emissions warranty. Rather, Plaintiff was charged for said repairs because of JLRNA's uniform and systematic business practice of intentionally refusing to identify in the JLRNA warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced warranted parts under California law in order to limit the amount of warranty claims paid by JLRNA.

51.     CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires JLRNA to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

52.     JLRNA intentionally failed to identify all said components in order to reduce the amount of money that JLRNA spends on warranty-related repairs.  If JLRNA complied with California law and properly identified all parts as high-priced warranted parts that should be identified as such, then JLRNA dealerships would properly provide warranty coverage for said high-priced warranted parts.

53.     JLRNA's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, *et seq.* (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*

54.     Plaintiff and other members of the Class have suffered damage as a result of JLRNA's wrongful conduct.

55.     On December 31, 2018, pursuant to California Civil Code Section 1782, counsel for Plaintiff sent JLRNA a letter, notifying JLRNA in writing of Plaintiff's claims under the Consumers Legal Remedies Act relating to said JLRNA Warranty concealment. Said letter provided JLRNA with an opportunity to take actions to remedy said unlawful practices. Specifically, the letter indicated that JLRNA wrongfully failed to identify the in tank fuel pump relating to Plaintiff's vehicle as being a high-priced emissions part, having a 7-year 70,000-mile California emissions warranty, and failed to provide said coverage.

56.     On February 27, 2019, JLRNA's counsel sent a letter in response, indicating in essence that JLRNA conducted an analysis at the time that JLRNA submitted the application for vehicle certification, determined that the in tank fuel pump did not qualify as a high-priced emissions part covered under the 7-year 70,000-mile California emissions warranty, and that JLRNA shared its findings with CARB.

57.     In response, on March 9, 2019 counsel for Plaintiff wrote JLRNA's counsel stating, *"In order for me to determine if your letter is accurate, please provide me with documentation regarding the cost of the parts and labor relating to the parts at issue, and relating to the relevant time period."* This request was made by Plaintiff's counsel in an effort to sincerely provide JLRNA with an opportunity to explain this situation, which appeared on its

1  face to be a clear violation of CCR section 2037(c)(1)(B) and avoid potential litigation.

2  JLRNA's attorneys completely ignored this request.

**THE IN TANK FUEL PUMP IS A HIGH-PRICED WARRANTED PART**

4  58.    The low-pressure fuel pump, also known as the in tank fuel pump, should have

5  been classified as a high-priced warranty part entitled to extended warranty coverage for 7-years

6  70,000-miles under the California High-Cost Emissions-Related Parts Warranty.  The following

7  analysis identifies the applicable cost limit for the MY 2013 Land Rover LR4 and the estimated

8  replacement cost for the in tank fuel pump.

9  59.    Applicable Cost Limit:  On March 6, 2012, the California Air Resources Board

10  published Manufacturer's Advisory Correspondence 2012-1 ("MAC 2012").  The subject of the

11  MAC was identified as "Cost Limit For High-Priced Warranted Parts For 2013 Model-Year

12  (MY) Passenger Cars (PCs), Light-Duty Trucks (LDTs), Medium-Duty Vehicles (MDVs) and

13  Engines Used in These Vehicles (MDEs), And Off-Road Large Spark –Ignition Engines

14  (LSIEs)."  The MAC "identifies the cost limit for high-priced warranted parts of MY2013 PCs,

15  LDTs, MDVs, MDEs and LSIEs."  The Gibson Vehicle is a Light Duty Truck and/or a

16  Passenger Car under the MAC.  Thus, the MAC established the cost limit for high-priced

17  warranted parts for the Gibson Vehicle and for all 2013 Land Rover LR4 vehicles.

18  60.    The MAC concluded that the high-priced cost limit was $570.00 for applicable

19  model year 2013 vehicles (which includes the Gibson Vehicle and the other 2013 Class

20  Vehicles as defined herein):

21  Cost Limit for High-Priced Warranted Parts for MY2013

22  According to 13 CCR §2037(c) or §2435(b), as applicable, the cost
23  limit for high-priced warranted parts for MY2013 PCs, LDTs,
   MDVs, MDEs, and LSIEs is calculated using the annual average
24  nationwide urban consumer price index (CPI) for 2011, the calendar
   year two years prior to the model-year for which the cost limit is
25  being calculated.  This CPI is published by the U.S. Bureau of Labor
   Statistics.  Rounded to the nearest ten dollars, the MY2013 cost limit
26  is $570, as calculated below:

27
   MY2013 Cost Limit = $300 × (calendar 2011 CPI/baseline CPI) =
28  $300 × (224.9/118.3) = $570

61.    The $570.00 cost limit means that if the total cost to diagnose and repair, or if necessary, replace a warranted part exceeds $570.00, then the warranted part shall be covered for 7 years or 70,000 miles, whichever occurs first.

62.    Further, the MAC provides that manufacturers must document and identify all high-priced warranted parts:

> Manufacturers must submit in their applications for certification the documentation used to identify the high-priced warranted parts in accordance with 13 CCR §2037(c)(3) or §2435(b), as applicable. The documentation shall include all emission-related parts costing more than $470 (i.e., calculated cost limit minus $100) to replace. This documentation shall substantiate that the list includes all potential high-priced parts. The documentation shall include the estimated retail parts costs, labor rates in dollars per hour, and the labor hours necessary to replace the parts including standard diagnosis. If the labor hours being charged for customer-pay repairs are different from those specified by the manufacturer for warranty repairs, the manufacturer shall substantiate the labor hours specified. All applications and required documentation (i.e., high-priced warranted parts cost list) must be submitted using the Air Resources Board's Document Management System.

63.    <u>Replacement Cost</u>.  The replacement cost for the in tank fuel pump (which includes parts and labor) exceeded the applicable cost limit described above.

64.    The cost limit was exceeded *based on the labor cost alone*.  Based on Plaintiff's repair records, the total time to diagnose and repair the low pressure fuel pump, including draining and replacing the Gibson Vehicle's fuel, was 5 hours, calculated as follows: at the time of Plaintiff's repair, the hourly labor rate for the Ventura Dealership (where the repairs on Plaintiff's vehicle were performed) was $139.00 per hour. The total cost of the labor associated with diagnosing and repairing the low pressure fuel pump was $695.00. Thus, the total time to diagnose and repair the low pressure fuel pump on Plaintiff's vehicle was 5 hours ($695/$139=5).

65.    The hourly labor rate paid by JLRNA in the State of California for the purpose of calculating the cost limit for high-priced warranted parts was no less than $120.00 per hour, based on information obtained by Plaintiff (which may not even be the labor rate in the highest-cost metropolitan area of California, as required by Section 2037(c)).  For example, in January of 2013, JLRNA paid Land Rover Encino an hourly rate of $122.00 per hour. In October of

2013, JLRNA paid Land Rover San Diego an hourly rate of $125.00 per hour. In September of 2013, JLRNA paid Jaguar Land Rover of Carlsbad an hourly rate of $125 per hour.

66.     Further, in 2012, in order to determine the labor rate for the purpose of calculating the cost limit for high-priced warranted parts for model year 2013, JLRNA likely also analyzed labor rates for years 2010, 2011, and 2012.  On information and belief, even for that time frame, JLRNA paid its dealers standard labor rates exceeding $120 per hour.  For example, based on information obtained by Plaintiff, in November 2010, JLRNA paid Hornburg Jaguar Land Rover Hollywood $122.00 per hour. In December 2011, JLRNA paid Land Rover Encino $122.00 per hour. In December 2012, JLRNA paid Land Rover Encino $122.00 per hour.

67.     Thus, even dating back to November 2010, JLRNA paid $122.00 per hour for labor. Therefore, in analyzing whether a part for its model year 2013 vehicles is a high-priced part, there is no way that JLRNA could have performed an analysis which complied with JLRNA's obligations pursuant to California law, without using an hourly labor rate of at least $120.00 per hour.

68.     As such, the labor cost for diagnosing and repairing the low pressure fuel pump, using Gibson's repairs on October 4, 2017 as a benchmark to determine how long it would take to perform the diagnosis and repair, when performing this calculation using 2013 labor rates, is no less than $600.00 ($120 x 5 = $600).  This exceeds the $570.00 threshold based on labor cost alone.

69.     While JLRNA may contend that the manufacturer's stated time or the "book time" to repair the low pressure fuel pump is 1.8 hours, the book time does not include the cost to diagnose the problem and does not include the cost to drain and refill the gas tank.  The book time is no more than a guide for what JLRNA has agreed to pay manufacturers for repairs performed under warranty, and most importantly, is not what retail consumers such as Gibson actually are charged.

70.     Additionally, in determining if a part should be considered a high-priced part, a manufacturer is supposed to consider the estimated retail parts costs, the labor rate in dollars per

hour, and the labor hours necessary to diagnose and replace the parts. A manufacturer is supposed to calculate the retail labor hours charged, not a negotiated book rate that is only enjoyed by the manufacturer. Plaintiff Gibson's repairs were done at a JLRNA authorized repair facility, which charged retail 5 hours to diagnose and repair the defect. Thus, Gibson contends that the retail, non-discounted time for the repairs is 5 hours.

71.     With respect to the actual cost that JLRNA paid for the parts, that information is in the exclusive control of JLRNA.  However, the actual cost of the parts for completing the low pressure fuel pump repair to Plaintiff's vehicle in 2017 was $514.34, excluding tax, based on the repair records.  (The total parts cost was $554.20 including tax.)  Accordingly, based on that amount, Plaintiff calculates that the cost of the parts needed to replace the low pressure fuel pump in 2013 should have been no less than $411.47, as follows: unless JLRNA is unreasonably increasing the cost of its parts in a manner inconsistent with the overall inflation rate, the cost of the part did not increase more than 25% from 2013 to 2017.  An increase of 25% in three years is an increase of more than 6% per year, even when considering the compounding effect of the increase. The United States Bureau of Labor and Statistics uses a Consumer Price Index Calculator to estimate how much a product will increase in price based upon inflation. The calculator can be found at, "https://data.bls.gov/cgi-bin/cpicalc.pl." Using the repair date of October 2017 as the starting date, asking what the price of the good would have been in January 2012, and using the pretax cost of the parts of $514.34, the January 2012 cost that JLRNA would have used as a projection to determine the 2013 cost would have been $472.64.  Unless JLRNA has engaged in price gouging relating to its parts, the part cost certainly should have been no less than $411.47 in 2013.

72.     Thus, the total estimate for the parts and labor needed to diagnose and perform the repairs to the low pressure fuel pump for Gibson's vehicle, using 2013 pricing totals, was $1,011.47, which is far in excess of the $570.00 cost limit for 2013.  Accordingly, the low pressure fuel pump should have been designated as a high-priced warranted part and should have been covered under the extended warranty for 7-years 70,000-miles under the California High-Cost Emissions-Related Parts Warranty.

73.     A similar analysis applies to the cost limits and replacement costs for diagnosing and replacing the in tank fuel pump for the 2014 model year Class Vehicles and confirms that these costs exceeded the cost limits for 2014, based on labor costs alone, and should be covered by JLRNA as a high-priced emissions part.

74.     With respect to the cost limits for 2014, on March 13, 2013, the California Air Resources Board published a Manufacturer's Advisory Correspondence which was the same as the 2012 correspondence, but applicable to Model Year 2014 vehicles. It was entitled Manufacturers Advisory Correspondence 2013-1 ("MAC 2013"). MAC 2013 concluded that the high-priced cost limit was $580.00 for applicable model year 2014 vehicles, which includes the Class Vehicles (compared to $570.00 for model year 2013 vehicles).

75.     The  increases in the cost limits for the in tank fuel pump for 2014 and the increase, if any, in the cost of the replacement part, are not large enough to cause the cost of diagnosing and replacing the low pressure fuel pump to fall below the cost thresholds for 2014 Class Vehicles.

76.      The cost of labor has only increased since 2013.  For example, based on information obtained by Plaintiff, in February 2014, JLRNA paid Land Rover San Diego an hourly rate of $125.00 per hour.  In December 2014, JLRNA paid Land Rover Encino an hourly rate of $130.00 an hour. Further, all of the Class Vehicles, including model years 2014, are equipped with either the same in tank fuel pump identified as Part Number LR043385 in Plaintiff's vehicle or the predecessor in tank fuel pump that was revised to Part Number LR043385, and the repair procedure for the removal and replacement of the in tank low pressure fuel pump for the 2012, 2013, 2014, 2015, and 2016 Land Rover LR4 vehicles is exactly the same.

77.     The cost of labor increased from 2013 to 2014. But even applying the 2010, 2011, or 2012 labor rate, the total estimate for just the labor needed to diagnose and perform the repairs to the low pressure fuel pump for Gibson's vehicle exceeds the $580.00 cost limits for 2014.  Accordingly, the low pressure fuel pump should have been designated as a high-priced warranted part for model years 2013 and 2014 and should have been covered under the extended

warranty for 7 years or 70,000 miles under the California High-Cost Emissions-Related Parts Warranty.

78.   The in tank low pressure fuel pump was properly designated as a high-priced warranted part for model year 2012 and for model years 2015 and 2016 but not for model years 2013-2014. The cost of labor has only increased since 2012, and the repair procedure for the 2012, 2013, 2014, 2015 and 2016 vehicles is exactly the same. It is the same procedure, it takes the same amount of time, the labor cost has only increased over time at a rate which dwarfs the incremental increase in the high-priced cost threshold, and it is the same part (which has been updated, but performs the same function). The labor cost alone associated with the replacement of the low pressure in tank fuel pump for the 2013 and 2014 vehicles exceeds the high-priced warranted emissions part cost threshold. Thus, the in tank low pressure fuel pump for the 2013 and 2014 Land Rover LR4 vehicles should be covered as a high-priced warranted emissions part, receiving 7-year 70,000-mile coverage.

79.   Plaintiff's analysis refutes possible alternative explanations by JLRNA, including the possibility that the determination of whether the in tank fuel part was a high-priced warranted part was made in advance using estimated values; or that JLRNA overestimated the costs associated with repairing the in tank fuel pump; or that the part cost associated with the in tank fuel pump declined from one model year to the next; or that the cost limit published by CARB increased while the repair cost of the in tank fuel pump remained stable.  At a minimum, the analysis by Plaintiff raises disputed issues of fact regarding the high-cost nature of the in tank fuel pump.

80.   Further, to the extent that JLRNA contends that it was only "estimating" the in tank fuel pump repair costs for 2013 (which is why it could not accurately determine whether the part was high-priced) that contention is refuted.  JLRNA knew the cost of the part because JLRNA was already using the same part in the 2010-2013 Land Rover Range Rover Sport.  The Land Rover Range Rover Sport used the same in tank fuel pump as the Land Rover LR4. The replacement procedure for the 2010-2013 Land Rover Range Rover Sport in tank fuel pump is virtually the same as the repair procedure for the 2012 through 2016 Land Rover LR4.  Thus, at

the time that JLRNA correctly determined that the cost for replacing the in tank fuel pump for the 2012 LR4 exceeded the high-priced warranted emissions part threshold and included coverage for the part in the 2012 JLRNA warranty booklet, JLRNA knew the cost of the part and was not guessing, based upon its experience with the 2010 through 2011 Land Rover Range Rover Sport.

81.      By failing to provide a 7-year 70,000-mile warranty for the in tank fuel pump, JLRNA violated the UCL and CLRA.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

82.      Plaintiff re-alleges and incorporates by reference each allegation set forth above.

83.      Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of himself and members of the Class as defined below.

84.      Excluded from the Class are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

85.      All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

86.      Plaintiff's proposed class consists of and is defined as follows:

> All persons in California who, within the last four years, have been owners or lessees of JLRNA MY 2013 through MY 2014 Land Rover LR4 vehicles and who have paid for repairs and parts for the in tank fuel pump that should have been covered under JLRNA's "high-priced warranted parts" 7-year 70,000-mile California emissions warranty (the "Class").

87.      Plaintiff reserves the right, based on further investigation and discovery, to redefine or expand the Class and/or to add subclasses to include other high-priced warranted parts.  Further, per the terms of the warranty book, the "California Emission System Warranties apply to vehicles registered in Arizona, California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington."  Therefore, Plaintiff reserves the right to expand the Class to include the same parts on vehicles registered in states other than California.

88.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members.  Among the common questions of law and fact include:

(a)    Whether JLRNA has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year 70,000-mile California emissions warranty for the in tank fuel pump and/or all parts that are defined as high-priced warranted parts pursuant to the CCR.

(b)    Whether JLRNA has failed, and is failing, to identify for consumers and dealerships the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts, and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(c)    Whether JLRNA has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR.

(d)    Whether JLRNA has failed, and is failing, to identify the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that JLRNA spends on warranty-related repairs.

(e)    Whether JLRNA's conduct of failing to identify the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss.

(f)    Whether JLRNA's conduct of failing to identify the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts

Warranty results in wrongfully minimizing the amount of money that JLRNA has to pay out in warranty claims.

(g)     Whether JLRNA's conduct of failing to identify the in tank fuel pump and/or all of the parts that should be identified as high-priced warranted parts and thus covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether JLRNA has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to JLRNA's failure to identify the in tank fuel pump and/or all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiff and Class members are entitled to injunctive relief regarding JLRNA's failure to identify the in tank fuel pump and/or all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)     The appropriate amount of restitution, or monetary penalties resulting from JLRNA's violations of California law.

(k)     Whether JLRNA has engaged in, and is engaging, in concealment relating to JLRNA's failure to identify the in tank fuel pump and/or all of the high-priced warranted parts that should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(l)     Whether JLRNA has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq*., with regard to JLRNA's failure to identify the in tank fuel pump and/or all of the high-priced warranted parts which should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.

89.     <u>Numerosity</u>:  As required by Fed. R. Civ. P. 23(a)(1), the members of the Class are so numerous that joinder of all Class members would be unfeasible and impractical, and the

resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court.   The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

90.    <u>Typicality</u>:  As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all Class members since Plaintiff and all members of the Class suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

91.    <u>Adequacy</u>:  As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests adverse or antagonistic to those of the Class and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Class to its conclusion

92.    <u>Superiority</u>:  As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods.  A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

93.    Defendant keeps extensive computerized records of its customers.  Defendant has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

94.    Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

95.    JLRNA has actively engaged in misleading, and dishonest conduct relating to its failure to properly identify the in tank fuel pump as a high-priced warranted part covered under

the 7-year 70,000-mile California emissions warranty.  Despite acting diligently, Plaintiff and the Class cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered under the 7-year 70,000-mile California emissions warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and members of the Class, and the statute of limitations for bringing the claims set forth herein should be tolled.

96.     JLRNA has actual and constructive knowledge that it is violating California law by failing to identify the in tank fuel pump as a high-priced warranted part, and by failing to provide a 7-year 70,000-mile California emissions warranty relating to said part. JLRNA has concealed from Plaintiff and members of the Class that JLRNA is violating California law as set forth herein.

97.     Any applicable statute of limitation is tolled by JLRNA's knowledge, active concealment, and wrongful conduct set forth herein.  JLRNA is further estopped from relying on any statute of limitation because of its concealment set forth herein.

## FIRST CLAIM FOR RELIEF

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

98.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

99.     California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  JLRNA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

100.    The UCL imposes strict liability.  Plaintiff need not prove that JLRNA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

101.    JLRNA is a "person" as defined by Business & Professions Code § 17201.

102.    As a direct and proximate result of JLRNA's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**Unlawful Prong**

103.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

104.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

105.    JLRNA failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year 70,000-mile warranty coverage for the in tank fuel pump installed in Class Vehicles. The California Emissions Warranty applies to all Class Vehicles.  13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is JLRNA, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The low pressure fuel pump is a warranted part. The warranty period shall be 7 years or 70,000 miles for high-priced warranted parts. 13 CCR 2037(b)(3).  High-priced parts warranted parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for years 2013 and 2014. Although the low pressure fuel pump exceeded the cost limit for years 2013 and 2014, JLRNA has failed to provide 7-year 70,000-mile warranty coverage for the low pressure fuel pump for years 2013 and 2014.  The failure has resulted in damage to Plaintiff and members of the Class.

106.    Moreover, while Plaintiff does not yet know the specific information that JLRNA did or did not provide to CARB with respect to the in tank fuel pump for the Class Vehicles, on information and belief, JLRNA did not designate the part as a high-priced warranted part that

should be covered by the 7-year 70,000-mile California High-Cost Emissions-Related Parts Warranty.  Thereby, JLRNA also was able to avoid identifying the in tank fuel pump as a high-priced warranted part in the warranty books for the Class Vehicles, which purport to identify all parts covered under the 7-year 70,000-mile high-priced California emissions warranty. Thus, JLRNA's violation of § 2037(c)(1)(B) directly affected communications with consumers.  By violating Section 2037(c)(1)(B), JLRNA was able to avoid disclosing in the warranty books that the in tank fuel pump is a high-priced warranted part.

107.    JLRNA's conduct also violates the unlawful prong in that JLRNA has violated the CLRA as further alleged below.

108.    JLRNA's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## Unfair Prong

109.    JLRNA's conduct violates the unfair prong of the UCL.

110.    An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.   JLRNA's conduct violates all of these definitions.

111.    As alleged above, JLRNA engages and has engaged in a systematic business practice of intentionally failing to identify in the Passport to Service at the time of distribution, and in resources provided to its dealerships, numerous parts that JLRNA is obligated to identify as high-priced warranted parts by operation of law, including specifically the in tank fuel pump. JLRNA does this in an effort to reduce the amount of money that JLRNA spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to

discover this unlawful conduct.  If JLRNA complied with California law and properly identified the in tank fuel pump and all other parts as high-priced warranted parts that should be identified as such, then JLRNA dealerships would properly provide warranty coverage for said high-priced warranted parts.

112.    Further, JLRNA's conduct is unfair because it intentionally refuses to provide warranty coverage for the in tank fuel pump for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year 70,000-mile California emissions warranty. Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of JLRNA's unfair business acts and practices as set forth in detail.

113.    JLRNA's failure to properly identify the in tank fuel pump and/or all parts as high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional business practice on the part of JLRNA to minimize the amount of money that JLRNA has to pay out in warranty claims. This conduct violates California law.

114.    As a direct and proximate result of JLRNA's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace the in tank fuel pump and/or other high-priced warranted parts that should have been covered by JLRNA under the 7-year 70,000-mile California emissions warranty.  Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

115.    JLRNA's conduct does not benefit consumers or competition. Plaintiff and members of the Class could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial.  JLRNA's conduct only benefits JLRNA, by JLRNA wrongfully avoiding having to pay warranty claims which should be covered by the 7-year 70,000-mile California emissions warranty.

116.    The gravity of the consequences of JLRNA's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

117.     JLRNA's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

118.     To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to JLRNA's justification and motives for its conduct, and as to the impact of JLRNA's conduct on Plaintiff and Class members.

119.     JLRNA's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.   Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

### Deceptive Prong

120.     Plaintiff's claim under this prong is predicated on omissions, not misrepresentations.  While the warranty booklet for Class Vehicles claims to identify all of the parts covered under the 7-year 70,000-mile California emissions warranty, the warranty book omits the in tank fuel pump as a part that that should have been listed as covered by the high-priced emissions warranty.

121.     JLRNA engages in a uniform and systematic business practice of intentionally failing to identify in the JLRNA Passport to Service, and in resources provided to its dealerships, the in tank fuel pump as a high-priced warranted part. JLRNA does this in an effort to intentionally conceal the identity of the parts which should be covered under the 7-year 70,000-mile California emissions warranty for high-priced emissions parts, intentionally mislead consumers with regard to what parts are covered under the 7-year 70,000-mile California emissions warranty for high-priced parts, and reduce the amount of money that JLRNA spends on warranty-related repairs. As warranted parts necessary for the operation of the vehicles, the parts that JLRNA failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation.  If JLRNA complied with California law, and properly identified all parts as high-priced warranted parts which should be

identified as such, then JLRNA dealerships would properly provide warranty coverage for said high-priced warranted parts.

122.   JLRNA's failure to properly identify the in tank fuel pump as a high-priced warranted part is a systematic and intentional business practice on the part of JLRNA to minimize the amount of money that JLRNA has to pay out in warranty claims. This conduct violates California law.

123.   Said conduct is likely to deceive an ordinary consumer as JLRNA concealed this information from consumers and from JLRNA's dealerships, in an effort by JLRNA to minimize the amount of money that JLRNA has to pay out in warranty claims. One of the ways JLRNA misleads consumers relates to the information that JLRNA provides to consumers in the Passport to Service. JLRNA intentionally omits information from the Passport to Service by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year 70,000-mile California emissions warranty.

124.   In evaluating the repair costs to be charged, Plaintiff justifiably relied on the information in the warranty booklet about parts that should be covered under the high-priced emissions warranty and was deceived and suffered damage as a result of JLRNA's intentional and wrongful conduct.

125.   JLRNA is fully aware of its obligations pursuant to the CCR and purports to comply with them.  However, in derogation if its legal obligations, JLRNA willfully and intentionally conceals from consumers, and from the JLRNA dealerships, the in tank fuel pump as a part that should be covered as a high-priced warranted part pursuant to the California emissions warranty, in order to reduce the amount of money that JLRNA has to pay in warranty claims.

126.   JLRNA is and was under a duty to disclose to consumers and to its dealerships that the in tank fuel pump and/other parts that are required to be required to covered under the 7-year 70,000-mile California emissions warranty.

127.    JLRNA is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year 70,000-mile California emissions warranty because:

    (1)    JLRNA is and was in a superior position to know the true state of facts about the duration of the 7-year 70,000-mile California emissions warranty and which parts should be covered as high-priced warranted parts;

    (2)    JLRNA has made partial disclosures about the extent of the 7-year 70,000-mile California emissions warranty;

    (3)    JLRNA has actively concealed and failed to identify all of the parts that are covered under the 7-year 70,000-mile California emissions warranty; and,

    (4)    Members of the Class, including Plaintiff, have suffered actual loss due to JLRNA's concealment and false representations.

128.    The facts concealed and not disclosed by JLRNA to Plaintiff and members of the Class are material.  Had Plaintiff and members of the Class known the true extent of the 7-year 70,000-mile California emissions warranty, and had JLRNA been truthful to its dealerships and members of the Class with regard to identifying all of the parts and repairs that are covered under the 7-year 70,000-mile California emissions warranty, Plaintiff and members of the Class would have been able to avoid spending money in order to repair JLRNA vehicles sold and leased in California. As a result, Plaintiff and members of the Class have suffered damage.

129.    In order to minimize the amount of money that JLRNA spends on warranty related repairs, JLRNA continues to conceal that the in tank fuel pump is a high-priced warranted part that should be covered under the 7-year 70,000-mile California emissions warranty.

130.    Furthermore, JLRNA has refused to, and continues to refuse to provide 7-year 70,000-mile California emissions warranty coverage relating to all repairs for the in tank fuel pump which should be covered under said warranty pursuant to California law. This refusal is intentional, willful, unfair, and unlawful.

**SECOND CLAIM FOR RELIEF**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civil Code §§ 1750, *et seq.*)**

131.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

132.   JLRNA has violated Section 1770 of the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"). The violation results from JLRNA's failure to keep its promise to the State of California, and members of the Class, including Plaintiff, that it would honor the terms of the JLRNA warranty, and by doing so, that it would honor the terms of the CCR.  Furthermore, the Passport to Service provided by JLRNA to consumers, including Plaintiff, specifically references the California emissions warranty, and both inferentially and specifically represents that it will honor the terms of the CCR, however JLRNA has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

133.   Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by JLRNA pursuant to the CCR. The Gibson Vehicle was presented by Plaintiff for repairs at a JLRNA authorized repair facility, in compliance with the terms and conditions of the JLRNA warranty. The Gibson Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Gibson Vehicle's mileage and age. JLRNA wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

134.   JLRNA knows that it is violating the terms of the CCR, however JLRNA intentionally violates the CCR in order to save money. Plaintiff and members of the Class are generally unaware of the terms and scope of the CCR, thus JLRNA is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Class have suffered damage. JLRNA engages in a systemic pattern of denying warranty claims under the CCR relating to high-priced warranted parts.

135.   Plaintiff and members of the Class have presented JLRNA vehicles to JLRNA authorized repair facilities for repairs that should have been covered under the CCR, but

coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Class have thus suffered damage. Plaintiff brings this claim on behalf of himself and the Class.

136.    JLRNA's conduct in warranting, advertising, leasing, selling and distributing vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)    JLRNA represents and has represented that the vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)    JLRNA has falsely represented that the vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)    JLRNA advertised the vehicles that have been sold and leased in the State of California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

137.    Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

138.    Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

139.    Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

140.    Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against JLRNA as follows:

1.    Plaintiff, on behalf of himself and members of the Class, requests that the Court enter judgment against JLRNA as follows:

1        (a)     An order certifying the proposed Class designating Plaintiff as named

2    representative of the Class, and designating the Plaintiff's Counsel as Class Counsel;

3        (b)     A declaration that JLRNA is financially responsible for notifying all

4    Class members about the wrongful conduct set forth herein;

5        (c)     An order enjoining JLRNA from further deceptive distribution, sales,

6    and lease practices, and to reimburse both Plaintiff and the Class for the money wrongfully

7    paid by Plaintiff and members of the Class relating to repairs which should have been covered

8    by JLRNA under the 7-year 70,000-mile California emissions warranty;

9        (d)     An award to Plaintiff and members of the Class of compensatory,

10    exemplary, and statutory damages, including interest, in an amount to be proven at trial;

11        (e)     An award to Plaintiff and members of the Class of any repair costs they

12    are owed;

13        (f)     A declaration that JLRNA must disgorge, for the benefit of the Class, all

14    or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein,

15    or make full restitution to Plaintiff and members of the Class;

16        (g)     An award of attorneys' fees and costs, as allowed by law;

17        (h)     An award of attorneys' fees and costs pursuant to California Code of

18    Civil Procedure § 1021.5;

19        (i)     An award of pre-judgment and post-judgment interest;

20        (j)     Leave to amend the Complaint to conform to the evidence produced at

21    trial; and

22        (k)     Other relief as may be appropriate under the circumstances.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

SECOND AMENDED CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial

3   by jury as to all claims so triable.

4

5   Dated: May 15, 2020                                    Respectfully submitted,

6                                                          **POMERANTZ LLP**
                                                           **THE LAW OFFICE OF ROBERT l. STARR**
7

8

                                                  By: _____
9
                                                           Jordan L. Lurie
10                                                         Ari Y. Basser
                                                           Robert L. Starr
11

12                                                         *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28